UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------------X
DEANDRE STARKS,
Plaintiffs,
-against-

THE CITY OF NEW YORK (CITY); THE NEW YORK CITY POLICE DEPARTMENT (NYPD); individually and in their official capacity as New York City Police Officers MICHAEL RENNA (TAX REG # 957078), JOSEPH, MORGANTE(TAX REG# 953142) and KAITLYN BAZAREWSKI (TAX REG#: 9554 3),
Defendants,
----------------------------------------------------------------------X

**COMPLAINT AND JURY DEMAND**

19-cv-04658

Plaintiff DEANDRE STARKS, by and through his attorney, Martin Kanfer, Esq. state as follows:

**INTRODUCTION**

1. This action arises from another shameful, vicious, and cruel act of police brutality and in the history of New York City.

2. It seeks compensation for the unconstitutional and disgraceful conduct of police officers who abused DEANDRE STARKS, police officers who witnessed or were aware of these events yet failed to report what they knew, thereby creating a "blue wall" of silence and lies to obstruct justice and prevent the truth from surfacing, and police supervisors who failed to control subordinates with a history of abusive behavior. Ultimately, MR.STARKS seeks redress against the City of New York for their deliberate indifference and negligence with respect to customs, policies, and practices that permitted, condoned, and preserved a "code of silence" environment in which the most violent police officers believed they would be insulated from swift and effective investigation, prosecution, and

      conviction for even their most brazen acts of brutality. The inevitable result of this institutional indifference is the extraordinary injuries inflicted upon MR. STARKS.

3. During the early morning of August 17, 2018, DEANDRE STARKS was arrested. During this process MR. STARKS was repeatedly struck in the face and head with a walkie talkie by the arresting officers.

4. MR. STARKS was assaulted, battered, arrested and imprisoned.

5. Ultimate responsibility for the horrific events of August 17, 2018 and their aftermath rests with the City of New York and The New York City Police Department and their agents/employees. MR. STARKS was treated in an inhumane manner.

6. The policies, customs, and practices of the NYPD have promoted an atmosphere in which the very worst police officers feel assured that evidence of misdeeds depriving citizens of their civil rights, no matter how awful, will go unpunished. With the imposition of punitive damages against all defendants with the exception of the City, plaintiffs hope to deter defendants and bring an end to this intolerable cycle of violence.

**JURISDICTION**

7. This action is brought pursuant to 42 U.S.C. §§ 1981, 1983, 1985, 1986, and 1988; and the First, Fourth, Fifth, Eighth, and Fourteenth Amendments to the United States Constitution and the laws of the State of New York. Jurisdiction is founded upon 28 U.S. C. §§ 1331, 1343(1-4), and 2202. Plaintiffs further invoke the supplemental jurisdiction of this Court to adjudicate pendant state law claims pursuant to 28 U.S.C. § 1367.

8. Venue is proper in this district under 28 U.S.C. § 1391(b).

## PARTIES

9. Plaintiff DEANDRE STARKS is a resident of the City of New York.

10. Defendant, City of New York (City), is a municipal corporation within the State of New York and the public employer of the police officers named as defendants in this action.

11. Defendant, New York City Police Department (NYPD), is an agency of the City of New York, existing and operating by virtue of the laws of the State of New York and the City of New York.

12. In addition to the facts alleged in the following subparagraphs, the following defendants are all sued in their individual and official capacities and all acted within the scope of their employment and under color of state law, to wit, under color of the statutes, ordinances, regulations, policies, customs and usages of the State of New York and/or the City of New York:

12.a Defendant MICHAEL RENNA, at all relevant times, was a police officer of defendant Police Department;

12.b Defendant JOSEPH, MORGANTE, at all relevant times, was a police officer of defendant Police Department;

12.c Defendant and KAITLYN BAZAREWSKI, at all relevant times, was a police officer of defendant Police Department;

## NOTICE OF CLAIM

13. Plaintiffs, in furtherance of their state causes of action, filed timely notice of claim against the City in compliance with General Municipal Law Section 50.

14. More than 30 days have elapsed since service of said notice and the City has failed to pay

or adjust the claim.

15. The City has not held a 50-h examination of plaintiffs in advance of commencing this lawsuit.

16. This action has been commenced within one year and ninety days after the happening of the events upon which these claims arise.

**FACTUAL AND GENERAL ALLEGATIONS**

17. During the early morning hours, August 17, 2018, DEANDRE STARKS was arrested. During this process MR. STARKS was repeatedly struck in the face and head with a walkie talkie by the arresting officers. MR. STARKS was assaulted, battered by a walkie talkie after he surrendered, arrested and imprisoned

18. The force used was unnecessary, unreasonable, and excessive.

19. At no time during the events described above did the defendant officers have cause for the assault on MR. STARKS and no legal cause or excuse for his abuse.

20. The actions of all individual defendants were performed within the scope of their employment and authority, and for whose acts the Defendants CITY are liable under the doctrine of respondeat superior.

21. The actions of the defendant officers violated MR. STARKS's clearly established rights under the First, Fourth, Fifth, Eighth, Thirteenth and Fourteenth Amendments of the Constitution and were the direct and proximate cause of the physical and psychological injuries he suffered.

22. The actions of all defendants were intentional, malicious, and in bad faith, thus giving rise to punitive damages as to all defendants with the exception of the municipality.

## DAMAGES

23. As a direct and proximate result of the said acts of the defendants, MR. STARKS suffered the following injuries and damages:

    a. Violation of his rights under the First, Fourth, Fifth, Eighth, Thirteenth, and Fourteenth Amendments to the Constitution;

    b. Loss of physical liberty;

    c. Physical injuries, pain and suffering, scarring , lacerations, bruising swelling and cuts to left eye and forehead, blurred vision, extreme fear, emotional trauma, requiring the expenditure of money for treatment expected to last the rest of his life;

    d. Economic damages including loss of income; and

    e. Humiliation, embarrassment, and injury to reputation.

    The physical, psychological, and economic consequences of the defendants' actions continue to date, and upon information and belief, will continue into the future.

## CAUSES OF ACTION:

### COUNT I
### 42 U.S.C. § 1983 CONSPIRACY

24. Paragraphs 1-23 are incorporated by reference as though fully set forth.

25. The individual defendants, under color of law, conspired with each other, and with others, reached a mutual understanding, and acted to undertake a course of conduct to injure, oppress, threaten, and intimidate DEANDRE STARKS in the free exercise and enjoyment of the rights and privileges and equal protection of the law secured to him by

the Constitution, including the rights: to be free from the intentional use of unreasonable force; to be free from unreasonable searches and seizures; to associate and speak freely; to have access to and seek redress in the courts; and to be free from false arrest, false imprisonment, and the delay and denial of medical attention.

26. It was part of the conspiracy that the defendants did, among other acts, physically assault MR. STARKS.

27. In furtherance of the conspiracy and to cover up the acts of brutality, defendants engaged in the following:

   a. Abused and imprisoned MR. STARKS;

   b. Fabricated and contrived the criminal charges lodged against MR. STARKS;

## COUNT II
## 42 U.S.C. § 1983 - UNREASONABLE AND EXCESSIVE FORCE

28. Paragraphs 1-27 are incorporated by reference as though fully set forth.

29. By their conduct, defendants, under color of law, deprived MR. STARKS of his constitutional right to be free from excessive and unreasonable force.

30. MR. STARKS claims damages for the injuries set forth above.

## COUNT III
## 42 U.S.C. § 1983 - FAILURE TO INTERCEDE

31. Paragraphs 1-30 are incorporated by reference as though fully set forth.

32. By their conduct and under color of state law, it is believed defendants officers each had opportunities to intercede on behalf of MR. STARKS to prevent the excessive use of force but due to their intentional conduct or deliberate indifference declined or refused to do so.

33. As a direct and proximate result, MR. STARKS suffered the injuries and damages described above.

**COUNT IV**
**42 U.S.C. §§ 1981, 1983 - FIRST, FOURTH, AND FOURTEENTH AMENDMENT VIOLATIONS**

34. Paragraphs 1-33 are incorporated by reference as though fully set forth.

35. By their conduct and under color of law all individual and officers, deprived MR. STARKS of his First Amendment right to have access to and seek redress in the courts.

36. The defendants engaged in a cover up in order to conceal the wrongful and unlawful conduct taken against MR. STARKS.

37. The defendants' efforts to conceal the truth continue to the detriment of MR. STARKS.

38. As a direct and proximate result, MR. STARKS suffered the injuries and damages described above.

**COUNT V**
**42 U.S.C. § 1985(3) CONSPIRACY WITH RACIAL ANIMUS**

39. Paragraphs 1-38 are incorporated by reference as though fully set forth.

40. The individual defendants,, under color of law, conspired with each other, reached a mutual understanding, and acted to undertake a course of conduct to injure, oppress, threaten, and intimidate DEANDRE STARKS in the free exercise and enjoyment of the rights and privileges and equal protection of the law secured to him by the Constitution including the rights: to be free from the intentional use of unreasonable force; to be free from unreasonable searches and seizures; to associate and speak freely; to have access and seek redress in the courts; and to be free from false arrest, false imprisonment, and

the delay and denial of medical attention.

41. The City of New York, through its agents, was a willful participant in joint action with officers acting under color of law.

42. It was part of the conspiracy that the defendants did, among other acts, physically assault MR. STARKS.

43. In furtherance of the conspiracy, and to conceal the crimes and misconduct of all the defendants, with the exception of the municipality, engaged in a cover up.

44. The conduct of the defendants was motivated by racial animus and by their desire to injure, oppress, threaten, and intimidate DEANDRE STARKS because of his race, African-American.

45. As a proximate and direct result of defendants' conduct, MR. STARKS suffered the injuries and damages described above.

**COUNT VI**
**42 U.S.C. § 1986 ACTION FOR NEGLECT TO PREVENT**

46. Paragraphs 1-45 are incorporated by reference as though fully set forth.

47. On information and belief, the individual named defendants, MICHAEL RENNA, JOSEPH MORGANTE and KAITLYN BAZAREWSKI, had knowledge that a cover up, and 42 U.S.C. 1985(3) conspiracy to cover up the brutality perpetrated against MR. STARKS were in progress, had the power to prevent or aid in preventing the cover-up and conspiracy from continuing, and neglected or refused to do so.

48. With reasonable diligence, defendants could have promptly reported the brutality to superiors. Their failure contributed to MR. STARKS's remaining under arrest, guarded, and handcuffed throughout, thereby exacerbating his pain and suffering and depriving

him of access to the courts.

**COUNT VII**
**42 U.S.C. § 1983 SUPERVISORY LIABILITY**

49. Paragraphs 1-48 are incorporated by reference as though fully set forth.

50. Defendant at all times employed, at the relevant times, supervisory personnel at the 103rd precinct or in the NYPD, with oversight responsibility for line officer MICHAEL RENNA, JOSEPH MORGANTE and KAITLYN BAZAREWSKI. They were responsible for training, instruction, supervision, and discipline of the officers who brutalized MR. STARKS.

51. It is believed that defendants supervisory personnel received complaints about the conduct of line officer MICHAEL RENNA, JOSEPH MORGANTE and KAITLYN BAZAREWSKI, and other officers in the 103rd precinct, knew about past complaints, aberrant behavior, and disciplinary infractions, or, in the exercise of due diligence, would have perceived that these officers had conduct and disciplinary problems that posed a pervasive and unreasonable risk of harm to MR. STARKS.

52. Defendants supervisors knew, or in the exercise of due diligence would have known that the conduct of line officer MICHAEL RENNA, JOSEPH MORGANTE and KAITLYN BAZAREWSKI, displayed toward MR. STARKS was likely to occur.

53. It is believed defendants supervisors failed to take preventative and remedial measures to guard against the brutality and cover up committed by line officer MICHAEL RENNA, JOSEPH MORGANTE and KAITLYN BAZAREWSKI. Had they taken appropriate action, MR. STARKS would not have been injured.

54. The failure of defendant's employees to supervise and discipline line officer MICHAEL RENNA, JOSEPH MORGANTE and KAITLYN BAZAREWSKI and the other officers of the 103rd precinct, amounted to gross negligence, deliberate indifference, or intentional misconduct which directly caused the deprivations suffered by MR. STARKS.

**COUNT VIII**
**42 U.S.C. § 1983 - MONELL CLAIM**

55. Paragraphs 1-54 are incorporated by reference as though fully set forth.

56. Prior to August 17, 2018, the City developed and maintained policies and customs exhibiting deliberate indifference to the constitutional rights of its citizens, which caused the violations of MR. STARKS's rights.

57. It was the policy and/or custom of the City to investigate inadequately and improperly civilian complaints of police misconduct. Instead, acts of brutality were tolerated by the City. The Internal Affairs Bureau (IAB) and the Civilian Complaint Review Board (CCRB) have substantially failed to investigate, deliberate, and discipline transgressors. Since the CCRB became independent in 1993, through December 1996 it received 18,336 complaints, yet the NYPD dismissed only one officer as a result of a CCRB investigation. IAB investigations of brutality rarely lead to administrative trials and when they do, and the charges are somehow sustained, the punishment is minimal, lacking any deterrent effect. Since there is no disciplinary sanction available between thirty days' suspension and dismissal, and dismissal is almost always deemed too harsh, even the most brazen acts of brutality, short of murder, are resolved with a slap on the wrist.

58. The City has been on notice for more than a generation that brutality is widespread and

that particular reforms need to be implemented. From reform-minded Commissioner Patrick Murphy to the Mollen Commission twenty-five years later, the City has been repeatedly cautioned that a systemic tolerance for brutality flourishes throughout the NYPD. Several years before MR. STARKS was brutalized the Mollen Commission report noted, "This tolerance, or willful blindness, extends to supervisors as well. This is because many supervisors share the perception that nothing is really wrong with a bit of unnecessary force and because they believe that this is the only way to fight crime today." Mollen Comm. Report, at 49.

59. It was the policy and/or custom to supervise and discipline officers inadequately, including the defendant officers, thereby failing to discourage constitutional violations on the part of its police officers.

60. It was and is the policy of the City to give police officers suspected of criminally assaulting a civilian a special break -- the "48 hour rule." In the last twenty years, hundreds of civilians have been fatally wounded by police action but only four police officers have been convicted for on duty killings since 1977. The police indicted for serious brutality are a precious few; those convicted can be counted on one's hands.

61. The "48 hour rule" delays questioning of police suspects for two business days, a privilege that no other criminal suspect in New York enjoys and that no other police suspect in any other major city in the nation can hide behind. Moreover, it requires that when the target officer is notified, a PBA representative must be present. The PBA representatives, who are almost always members of the NYPD, hear confessions and admissions of brutality, and then conceal them from the Department, a practice condoned

        by the Department even though the rules and regulations of the NYPD explicitly prohibit it. Additionally, on information and belief, the PBA representatives utilize the 48 hours to assist target officers in conspiring to cover up their crimes and misconduct and thus avoid detection and punishment.

62. Although the "48 hour rule" is supposed to apply only to administrative investigations, it is the City's custom to apply it to criminal investigations as well. Moreover, the 48 hour delay is expressly limited to targets; mere witnesses are to be accorded a four-hour grace period. The custom, however, is to allow the PBA representative instead of the IAB to decide who is a target and who is a witness. In this case, it is believed the PBA representatives invoked the "48 rule" for everyone who was present at the 112th precinct when MR. STARKS was tortured.

63. Police officers of the City of New York have for years engaged in a pattern and practice of actively and passively covering up the misconduct of fellow officers by failing to come forward or failing to accurately give evidence as to misconduct of which they are aware, thereby establishing and perpetuating a "code of silence."

64. This "code of silence" is a custom deeply ingrained in the members of the New York City Police Department so as to constitute the actual policy of the City of New York.

65. The City has been deliberately indifferent to the need for more or different training, rules and regulations relating to police officers who witness or have information regarding misconduct by fellow officers. The City has failed to properly sanction or discipline officers who are aware of and subsequently conceal and/or aid and abet violations of constitutional rights of citizens by other New York City police officers, thereby causing

and encouraging New York City police officers, including the individual defendant officers in this case, to violate the rights of citizens such as MR. STARKS.

66. It is believed the City has maintained no system or an inadequate system of review of officers who withhold knowledge or give false information regarding misconduct by fellow officers. This failure to identify and track such officers, including the defendant officers, or to discipline, more closely supervise, or retrain such officers who engage in the "code of silence," causes New York City police officers to believe that they can engage in misconduct, secure in the knowledge that their fellow officers will neither intervene, nor give evidence against them. These systemic deficiencies include, but are not limited to:

   a. Preparation of investigative reports designed to vindicate the conduct of officers who gave false information about the misconduct of other officers and who falsely denied knowledge about misconduct which they were in a position to observe.

   b. Preparation of investigative reports which uncritically rely solely on the word of police officers and which systematically fail to credit testimony of non-police witnesses.

   c. Preparation of investigative reports which omit or ignore factual information and physical evidence which contradict the accounts of police officers;

   d. Issuance of public statements exonerating officers involved in such incidents prior to the completion of investigation.

   e. Failure to have meaningful review of investigative reports by responsible superior

  officers for accuracy or completeness, including consideration of the conduct of officers who were not actively engaged in the misconduct which wasthe subject of the investigation, and acceptance of conclusions which are not supported by the evidence or which contradict such evidence; and

f. Failure to identify potential "code of silence" violations and maintain accurate records of allegations of such misconduct.

67. The City, prior to and at the time of this incident, was aware of the need for more or different training, rules, regulations, investigation and discipline relating to police officers who practice the "code of silence," and was deliberately indifferent to that need.

68. The foregoing acts, omissions, systemic deficiencies and deliberate indifference to the danger of harm to citizens like plaintiff and the need for more or different training and discipline are policies, practices and customs of the City of New York and have caused police officers, including the officer defendants in this case, to believe that they can violate the rights of citizens with impunity, and that their fellow officers would conceal such conduct, including swearing falsely and committing perjury, all with the foreseeable result that officers are more likely violate the constitutional rights of citizens.

69. As a direct and proximate result of the City's deliberate indifference, defendants violated MR. STARKS's constitutional rights for which he suffered substantial damages.

**COUNT IX**
**PENDENT CLAIM OF ASSAULT AND BATTERY**

73. Paragraphs 1-69 are incorporated by reference as though fully set forth.

74. By their actions, as set forth above, defendants committed atrocious acts of battery against

DEANDRE STARKS which included macing him about the face and body without cause. This use of physical force against MR. STARKS was unnecessary and excessive.

75. The City is responsible for the threats and the excessive and unnecessary physical force used by defendants because it occurred while they were acting in the scope of their employment, specifically in the course of arresting MR. STARKS and while they were executing their responsibility to hold safely him in police custody.

76. As a result of these physical threats and the excessive and unnecessary physical force used against him, MR. STARKS suffered severe and serious physical and mental injuries.

**COUNT X**
**PENDENT CLAIM OF PRIMA FACIE TORT**

77. Paragraphs 1-76 are incorporated by reference as though fully set forth.

78. By their actions, as set forth above, defendants MICHAEL RENNA, JOSEPH MORGANTE and KAITLYN BAZAREWSKI, inflicted harm upon MR. STARKS, without excuse or justification, out of disinterested malevolence.

**COUNT XI**
**PENDENT CLAIM - RESPONDEAT SUPERIOR**

79. Paragraphs 1-78 are incorporated by reference as though fully set forth.

80. At all relevant times, all defendant employees of the City of New York were acting for, upon, and in furtherance of the business of their employer and within the scope of their employment.

81. Consequently, the City is liable under the doctrine of respondeat superior for their

tortious actions.

**WHEREFORE**, plaintiffs request the following relief jointly and severally as against all of the defendants:

1. Award compensatory damages in an amount to be determined at trial;

2. Award punitive damages in an amount to be determined at trial;

3. Disbursements, costs, and attorneys' fees; and

4. For such other and further relief as to this Court may seem just and proper.

**PLAINTIFFS DEMAND TRIAL BY JURY**

Dated: Great Neck, New York
August 13, 2019

Respectfully submitted,

[signature]

MARTIN KANFER 1895
3 NORTHERN BLVD
GREAT NECK, NY 11021
516 482 6293